UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| RIVER RIDGE DEVELOPMENT AUTHORITY, | ) ) ) | |
| Plaintiff, | ) ) | 4:15-cv-00035-RLY-TAB |
| vs. | ) ) | |
| MID-AMERICA RAIL STORAGE & LEASING, INC., | ) ) ) | |
| Defendant. | ) | |

**ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, River Ridge Development Authority ("RRDA"), brought the present diversity action against Defendant, Mid-America Rail Storage & Leasing, Inc. ("Mid-America"), asking the court to declare that RRDA may terminate its Facilities Use Agreement ("FUA") with Mid-America. Shortly after serving Mid-America with its Complaint, RRDA filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For reasons set forth below, RRDA's motion is **DENIED**.

I.     **Background**

       A.     **The Parties and Agreements at Issue**

The Indiana Army Ammunition Plant ("Ammunitions Plant") is a former munitions manufacturing and storage facility located in Clark County, Indiana.  In 1992, the United States government placed it into "caretaker" status, and in 1993, it authorized

the Army to enter into agreements with private contractors for use of the facilities.  *See*

Pub. L. 102-484, § 191, *et seq*.   The Army then contracted with ICI Americas, Inc. to

manage and use the Ammunitions Plant property.  One of ICI's tasks was to make the

Army Plant facilities available for use by private industry, including the Defendant, Mid-

America.

On November 1, 1997, ICI and Mid-America entered into the FUA, which

included the lease of approximately 51.27 miles of railroad track and selected facilities on

thousands of acres at the Ammunitions Plant property for use in Mid-America's railcar

storage and transfer business.  (*See* Plaintiff's Ex. A).  The FUA provided an initial term

of 10 years with Mid-America retaining the right to renew for two additional 10-year

terms provided it did not default on its obligations.

In December 1998, ICI's contract with the Army expired, and ICI, the Army, and

Mid-America entered into a three-party agreement in which the Army assumed ICI's

rights and duties under the FUA.  (Plaintiff's Ex. B).  Around this same time period, the

RRDA was established pursuant to Indiana Code § 36-7-30 and charged with

redeveloping the Ammunitions Plant property.

On October 30, 2000, the Army entered into a Memorandum of Agreement

("MOA") with RRDA, thereby memorializing the Army's intention to lease and

subsequently convey the entire fee interest in the Ammunitions Plant property to RRDA,

for the purpose of developing an industrial park at that site.  (Plaintiff's Ex. C).  The same

day, the Army entered into an Interim Lease, whereby the Army leased the Ammunitions

Plant property to RRDA and again indicated its intent to eventually convey the entire fee

2

interests to RRDA.  (*See* Plaintiff's Ex. D).  Pursuant to paragraph 31 of the Interim Lease, RRDA agreed to accept the assignment of certain facilities use agreements, including the FUA.  On December 1, 2000, the Army and RRDA entered into an Assignment that assigned the FUA with Mid-America to RRDA.  (Plaintiff's Ex. E).

### B.    The Eminent Domain Action

On October 6, 2014, RRDA filed a Complaint for Appropriation of Leasehold Interest in the Clark Circuit Court, seeking to condemn and appropriate a portion of Mid-America's leasehold interest under the FUA.  (Plaintiff's Ex. G).  On February 27, 2015, Mid-America and RRDA came to terms on an Agreed Judgment and Order of Appropriation.  (Plaintiff's Ex. H).  The Agreed Judgment appropriated Mid-America's leasehold interest in a 2.744-acre tract known as "Tract 10B," and granted the RRDA the right to immediate possession of that property upon its payment of $75,000 to Mid-America.

On March 20, 2015, less than four weeks after Mid-America entered into the Agreed Judgment, RRDA filed this action seeking to acquire the balance of Mid-America's leasehold interest pursuant to paragraph 13 of the FUA, the terms of which are explained below.  On the same day it filed its Complaint, the RRDA filed this motion for summary judgment.

## II.    Standard of Review

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  Under Rule 56(a) of the

Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.   Contract Construction

The present dispute requires the court to interpret paragraph 13 of the FUA. In diversity cases such as this, the court applies federal procedural law and state substantive law. *See Erie v. R.R. Tompkins*, 304 U.S. 64, 78 (1938). The rules of contract interpretation are substantive; therefore, Indiana contract law governs the parties' dispute. *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

Under Indiana law, the primary objective in construing a contract is to give effect to the intent of the parties as expressed on the four corners of the document. *Cherokee Air Products, Inc. v. Buchan*, 14 N.E.3d 831, 834 (Ind. Ct. App. 2014) (citing *Kaghann's Korner, Inc. v. Brown & Sons Fuel Co.*, 706 N.E.2d 556, 565 (Ind. Ct. App. 1999)). Unambiguous terms are conclusive of the parties' intent; the court merely applies the language of the contract to the facts of the case. *Id*. The contract must be read as a whole and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. *Id*.

If the district court determines the meaning of a contract is unambiguous, it may determine its meaning as a matter of law. *Simon Prop. Grp., L.P. v. Michigan Sporting Goods Distrib., Inc.*, 837 N.E.2d 1058, 1070 (Ind. Ct. App. 2005). "'A contract term is

not ambiguous merely because the parties disagree about the term's meaning.'" *Id*.

(quoting *Roy A. Miller & Sons, Inc. v. Indus. Hardwoods Corp.*, 775 N.E.2d 1168, 1173

(Ind. Ct. App. 2002)).  Rather, language is ambiguous only if reasonable people would

find the contract susceptible to more than one construction.  *Id*.  The construction of an

ambiguous contract must be resolved by the trier of fact, rendering summary judgment

inappropriate.  *Walker v. Trailer Transit, Inc.*, 1 F. Supp. 3d 879, 882 (S.D. Ind. 2014)

(applying Indiana law).

## IV.    Discussion

RRDA claims that, because it appropriated part of Mid-America's leasehold

interest through settlement of a condemnation proceeding, it secured possession of part of

Mid-America's leasehold interest by operation of law, thereby triggering its right to

terminate the FUA pursuant to paragraph 13 of that document.  That paragraph reads, in

relevant part:

> 13.  DEFAULT BY THE SUBCONTRACTOR.[1]
>
> If [Mid-America] shall allow any payment required hereunder this
> Agreement to be in arrears more than thirty (30) days after written notice of
> such delinquency . . . , or should any other person than [Mid-America]
> secure possession of the Facilities, or any part thereof, by reason of any
> receivership, bankruptcy proceedings, *or other operation of law in any
> manner whatsoever*, [lessor] may, without notice to [Mid-America],
> terminate this Agreement, take possession of the Facilities and remove all
> persons and property therefrom, without being deemed guilty in any
> manner of trespass, and relicense the Facilities, or any part thereof, at such
> fees as [lessor] may with reasonable diligence be able to secure.

---

[1] The term "Subcontractor" is defined in the FUA as Mid-America Rail Storage and Leasing
Company.  The term "Facilities" as defined in the FUA refers to Mid-America's leasehold
interest.

(Plaintiff's Ex. A at 10) (emphasis added).  The parties' dispute whether the phrase "by operation of law" includes RRDA's appropriation of Mid-America's leasehold interest in Tract 10B by eminent domain.  Mid-America contends the Indiana Court of Appeals' decision in *Peter C. Reilly Trust v. Anthony Wayne Oil Corp.*, 574 N.E.2d 318 (Ind. Ct. App. 1991) is dispositive of that issue.

There, the City of Indianapolis sought by eminent domain to acquire property owned by the Trust, but leased to Wayne Oil, for the Circle Centre Mall Project.  *Id.* at 319.  The lease between the Trust and Wayne Oil did not contain a condemnation provision; instead, it contained a provision that allowed the Trust to terminate the lease if certain events occurred, including a transfer of the lease "by operation of law."  *Id.* at 319-20.  That provision stated, in relevant part:

> It is further agreed that if this lease should be sold under execution, or under direction of any court, or by virtue of any judicial sale, *or transferred by operation of law*, . . . or in the event the said leased premises or this lease shall come into the hands of an assignee, receiver, trustee, trustee in bankruptcy, or any public officer, at any time, the Lessor shall be entitled and is hereby expressly authorized and empowered at Lessor's option, to terminate the lease, and take immediate possession of said premises . . . ."

*Id.* at 320-21 (emphasis added).

The parties agreed to a just compensation with the City and conveyed their respective ownership and leasehold interests to the City.  *Id.*  The escrow agreement anticipated the filing of a declaratory judgment action to resolve the relative rights of the Trust and Wayne Oil, and further provided that the parties would proceed as if the condemnation action had run its course and a jury award had been made pursuant to a

trial. *Id*. The Trust thereafter filed a declaratory judgment action in state court, and lost. *Id*. at 319.

On appeal, the Trust argued that it was entitled to all of Wayne Oil's just compensation because the "transferred by operation of law" clause in the lease included condemnation. *Id*. at 320. The Court began its analysis by interpreting the termination clause as follows:

> Read as a whole, the disputed provision is an anti-assignment/bankruptcy clause designed to protect Trust from having to deal with an unapproved successor tenant through bankruptcy, corporate merger, dissolution or other such voluntary or involuntary transfers.

*Id*. at 321. The Court continued:

> Nevertheless, Trust argues the phrase "transferred by operation of law" as used in the provision includes condemnation. We disagree because a taking by eminent domain of all interests in the entire leased premises for the term of the lease terminates the lease. Hence, there is nothing to transfer.

*Id.*

Mid-America argues that, like the lease provision in *Reilly Trust*, paragraph 13's "by operation of law" clause does not include property secured through condemnation. Rather, it is an anti-assignment/bankruptcy clause intended to protect the RRDA from unapproved successor tenants through receivership, bankruptcy, and the like. Thus, Mid-America argues, paragraph 13 is meant to provide RRDA with an element of control over who might acquire Mid-America's property right. It is not intended to cover situations like the present one, in which RRDA's appropriation of a small part of Mid-America's interest through a condemnation proceeding is then treated as a default triggering paragraph 13's termination provision.

7

RRDA contends that *Reilly Trust* does not support Mid-America's interpretation of the phrase "by operation of law" because the lease in *Reilly Trust* required a "transfer" of the lease by operation of law.  By contrast, the termination clause in the FUA does not require a "transfer" of the lease to be triggered; rather, it allows for termination when any party other than Mid-America "secures possession" of any portion of the facilities Mid-America leases by operation of law.

The court finds the termination provision in *Reilly Trust* to be substantially similar to paragraph 13.  Although the termination provision in *Reilly Trust* uses the verb "transferred" and paragraph 13 uses the phrase "secures possession," the purpose of the two provisions is the same; that is, to prevent a third party from becoming a tenant of the leased premises without the consent of the lessor "by reason of any receivership, bankruptcy proceedings" and the like.[2]

Next, RRDA argues the present case is distinguishable from *Reilly Trust* because in *Reilly Trust*, the Trust lost because Wayne Oil's entire leasehold interest had been appropriated by the City of Indianapolis; therefore, there were no remaining rights under the lease and there was nothing left to transfer.  *See also P.C. Mgmt., Inc.*, 573 N.E.2d at

---

[2] RRDA cites cases which state that a transfer of property pursuant to a government's powers of eminent domain occurs "by operation of law."  *See, e.g., P.C. Mgmt., Inc. v. Page Two, Inc.*, 573 N.E.2d 434, 439 (Ind. Ct. App. 1991) (noting that the sublessee's interest "had terminated . . . by operation of law" after the sublessor conveyed property in lieu of a condemnation action); *City of Peerless Park v. Dennis*, 42 S.W.3d 814, 819 (Mo. 2001) ("Condemnation of the entire property ordinarily terminates a lease by operation of law."); *Village of Rosemont v. Maywood Proviso State Bank*, 501 N.E.2d 859, 862 (Ill. App. 1986) ("[C]ondemnation constitutes a transfer by operation of law. . . .").  The court does not doubt that authority; however, the issue here is whether the termination provision set forth in paragraph 13 of the FUA was meant to include a condemnation proceeding instituted by the lessor/government actor, RRDA.

437 (Ind. Ct. App. 1991) ("'If there is a taking by eminent domain of all of the leased property for all of the lease term, the lease is terminated.'") (quoting *Restatement (Second) of Property*, § 8.1(1) (1977)).  Here, however, there was only a partial taking of Mid-America's leasehold interest.  Consequently, RRDA argues, the FUA remains in effect and RRDA has remaining rights which it may exercise through reliance on the FUA – including its right to terminate the lease pursuant to paragraph 13.

Whether RRDA has remaining rights under paragraph 13 begs the question of who "any other person," as set forth in that paragraph, is intended to include.  To interpret "any other person" as including RRDA would require RRDA, as lessor, to remove itself from the leasehold "without being deemed guilty in any manner of trespass. . . ."  As Mid-America argues, "[T]he Lessor cannot possibly be its own unauthorized tenant."  On the other hand, "any other person" *could* include RRDA.  The court is therefore left with two reasonable interpretations of paragraph 13.  Accordingly, the proper interpretation of paragraph 13 must be resolved by the trier of fact, and RRDA's motion for summary judgment must be **DENIED**.

## V.    Conclusion

The court finds paragraph 13 of the FUA to be susceptible to two reasonable interpretations.  RRDA's motion for summary judgment (Filing No. 3) is therefore **DENIED**.

**SO ORDERED** this 27th day of August 2015.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

9

Distributed Electronically to Registered Counsel of Record.